# In the United States Court of Federal Claims

No. 21-1085 C
Filed: February 28, 2022

| | |
|---|---|
| RAYMOND BAYTOS, et al., | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| *Defendant*. | ) |
| | ) |

*Diana Jane Nobile*, McGillivary Steele Elkin LLP, Washington, D.C., for Plaintiffs.

*Brendan David Jordan*, United States Department of Justice, Civil Division, Washington, D.C., with whom were *Brian M. Boynton*, Acting Assistant Attorney General, *Martin F. Hockey, Jr.*, Acting Director, and *Reginald T. Blades, Jr.*, Assistant Director, of counsel, for Defendant.

## OPINION AND ORDER

**MEYERS, Judge.**

The Government moved to dismiss this collective action brought by current and former correctional officers for failure to state a claim upon which relief can be granted. Plaintiffs allege the Government failed to compensate them for work performed before and after their shifts. The Government contends that the activities for which Plaintiffs seek compensation are not integral and indispensable to Plaintiffs' principal activities, nor do the activities take more than a de minimis amount of time to perform. Because the Government seeks to impose a higher pleading standard than is required by law or this Court's precedent, the Court denies the Government's Motion to Dismiss.

## I.    Factual Background[1]

---

[1] The facts presented are from Plaintiffs' Second Amended Complaint, ECF No. 11, and presumed to be true for purposes of this Opinion and Order. The Court makes no factual findings.

Plaintiffs are 146 current and former correctional workers[2] employed by the United States at the Federal Correctional Institution (FCI) and/or Federal Satellite Low (FSL) Elkton in Lisbon, Ohio (collectively, the "Institution"). ECF No. 11 ¶¶ 1, 4. Plaintiffs filed this collective action alleging the Government violated their rights under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201 *et seq.* Specifically, Plaintiffs allege the Government failed to compensate them with overtime pay as the FLSA requires for certain pre- and post-shift activities they performed beyond their regularly scheduled 8 hours per day and 40 hours per week of work performed. ECF No. 11 ¶ 40. Plaintiffs seek relief under the and the Back Pay Act (BPA), 5 U.S.C. § 5596, including backpay, liquidated damages plus interest, and reasonable attorney's fees. ECF No. 11 Prayer for Relief.

The Institution is a low security prison facility that houses approximately 1,500 inmates convicted of various federal crimes including violent and drug-related offenses. *Id.* ¶¶ 8-9. Plaintiffs' principal activity "is maintaining the safety and security of the Institution, inmates, and staff." *Id.* ¶ 10. Plaintiffs must perform this "principal activity every moment that they are within the Institution from the moment they begin screening prior to their shifts, until they exit the Institution after their shift ends." *Id.*

Correctional officers staff posts within the Institution 24 hours per day, 365 days a year. *Id.* Posts are staffed for 8, 16, or 24 hours per day. *Id.* ¶ 11. Posts staffed for 24 hours per day are divided into three 8-hour shifts referred to as Morning Watch, Day Watch, and Evening Watch. *Id.* ¶¶ 11-12. At the beginning and end of these shifts, Plaintiffs must be present, in uniform, and have all assigned equipment and pertinent post information. When staffing these 24-hour posts, Plaintiffs "perform more than 8 hours and 10 minutes of work each day because plaintiffs perform work both before their scheduled paid start time and/or after the end of their scheduled paid shifts." *Id.* ¶ 13. Specifically, Plaintiffs must work "at least 15-30 minutes each shift, and sometimes more, before and after their scheduled shift times" without compensation. *Id.* ¶ 14.

Plaintiffs contend that their compensable workday begins when they start the process of clearing the staff screening site in the lobby. *Id.* ¶ 19. At the security screening, Plaintiffs pass through a metal detector and place equipment on an x-ray belt. *Id.* After this, Plaintiffs "collect and don their duty belts, protective vests, and other required equipment . . . which are essential to hold keys and access equipment." *Id.* ¶ 19. This step must be completed on the premises of the Institution. *Id.* ¶¶ 19-20.

After clearing the staff screening site, Plaintiffs at FCI Elkton enter the Control Center sally port where they "flip their accountability chit signifying that they are on duty." *Id.* ¶ 21. At FCI Elkton Plaintiffs then clear the sally port, walk down an outdoor walkway, and clear a locked slider gate that leads into the Institution's outdoor compound. *Id.* Plaintiffs then proceed to their duty posts. *Id.* ¶¶ 21-22. At FSL Elkton, Plaintiffs collect their equipment after clearing the staff screening site, clear a locked, glass door leading into the Compound, then proceed to their assigned duty post. *Id.* ¶ 23. At both facilities, from the moment Plaintiffs enter the staff

---

[2] Plaintiffs include both full-time correctional officers as well as other correctional workers such as food services employees, unit counselors, and correctional services staff, who were "augmented" to perform correctional officer tasks. ECF No. 11 ¶¶ 35, 36.

screening site until they arrive at their duty station, Plaintiffs perform activities including, *inter alia*, exchanging equipment and information with the outgoing correctional officers, supervising and monitoring inmates, and responding to emergencies as they arise. *Id.* ¶¶ 22, 24. Plaintiffs engage in these activities without compensation for at least 15-30 minutes per day before and after their scheduled shifts. *Id.* ¶ 14.

Plaintiffs allege that their "principal activity is maintaining the safety and security of the Institution, inmates, and staff." *Id.* ¶ 10. Plaintiffs perform this principal activity "from the moment they begin screening prior to their shifts until they exit the Institution after their shifts end." *Id.* Plaintiffs do so "by, among other things, maintaining constant vigilance to ensure that nothing out of the ordinary is occurring, immediately addressing any issues that they see no matter the location and time of day that it occurs, including before their paid shifts begin and after they end." *Id.* The specific pre- and post-shift activities Plaintiffs allege are compensable include the staff security screening, donning of the necessary equipment, flipping their chit, walking to their duty posts, exchanging equipment and information with the incoming/outgoing correctional officer, and exiting the Institution.

When clearing the staff screening site, Plaintiffs contend they "perform their principal activity of maintaining safety and security and assist in assuring no contraband enters the Institution." *Id.* ¶ 19. Plaintiffs also assert that the donning of necessary equipment is compensable because "plaintiffs cannot wear their duty belts, protective vests, and metal chains as they walk through the upright metal detector without sounding the alarm." *Id.* Nor can Plaintiffs dispense with the donning of their equipment because the equipment is necessary for Plaintiffs to perform their principal activity of maintaining safety and security in the Institution. *Id.*

Further, after flipping their accountability chit and during the walk to their duty posts, Plaintiffs "perform their principal activities of supervising and monitoring inmates and maintaining safety and security" because they are "in uniform, identifiable to the inmates and staff as correctional officers, and they perform patrol and security work" while remaining "vigilant, alert, and ready to . . . respond to emergencies." *Id.* ¶ 24.

Upon arriving at their posts, the incoming correctional officers perform an information exchange with the outgoing correctional officers regarding "any significant security events that occurred during the previous shift . . . ." *Id.* ¶ 25. Plaintiffs allege that during this time the incoming correctional officer must "inspect, account for, and exchange equipment . . . with the outgoing correctional officer assigned to that post." *Id.* Plaintiffs claim this information and equipment exchange is "integral and indispensable to Plaintiffs' principal activities of maintaining safety and security of staff, inmates, and the Institution." *Id.* ¶ 28. This is because the exchange of equipment and information "ensur[es] accountability for keys and correctional equipment so that such items do not fall into the hands of inmates, as well as [ensures] that oncoming officers have all information necessary to maintain the safety and security of the inmates, staff and post during their shift." *Id.* ¶ 26. The shifts of the incoming and outgoing officers do not overlap during this equipment and information exchange. *Id.* ¶¶ 26, 29.

While walking back from their duty posts after their shifts, Plaintiffs must "remain[] vigilant, alert, and ready to respond to emergencies . . . observing and correcting inmate

behavior, looking for contraband, [and] responding to body alarms and other emergencies . . . ." *Id.* ¶ 26.

## II.   Legal Standard

"A motion to dismiss . . . for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the plaintiff do not entitle him to a legal remedy." *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006) (quoting *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000)). As the Supreme Court explained, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And to be "plausible on its face," the complaint "does not need detailed factual allegations." *Twombly*, 550 U.S. at 555; *see also Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (Rule 8 "does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face."). In other words, the complaint must contain enough detail "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998) (citations omitted). Nevertheless, the Court "must assume all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant." *United Pac. Ins. Co.*, 464 F.3d at 1327-28 (quoting *Anaheim Gardens v. United States*, 444 F.3d 1309, 1314–15 (Fed. Cir. 2006)).

## III.   Discussion

### A.   The Complaint States a Claim for Relief.

The Government argues that the Complaint fails to allege any facts that plausibly suggest Plaintiffs are entitled to relief under the FLSA or BPA. Specifically, the Government contends "maintaining the safety and security of the Institution, inmates, and staff" is not sufficiently specific "to establish a 'principal activity' as a matter of law because 'safety and security' are not specific activities—much less 'principal activities,' as required." ECF No. 12 at 9-10. And the Government contends that Plaintiffs fail to allege that each of the specific activities are necessary to their principal activity, and that these specific activities take more than a de minimis amount of time. *Id*. 12 at 12. However, for the reasons explained below, Plaintiffs do state a plausible claim for relief under the FLSA and BPA. First, Plaintiffs allege the specific conduct that constitutes maintaining the safety and security of the Institution, inmates, and staff, which is sufficiently specific to constitute principal activities. Second, Plaintiffs plausibly allege the preliminary and postliminary activities they perform are "integral and indispensable" to performing these principal activities. And finally, Plaintiffs plausibly allege that these activities, in the aggregate, exceed the de minimis threshold. In sum, Plaintiffs' Complaint states a claim for relief under the FLSA and BPA and survives the Government's Motion to Dismiss.

#### 1.   The FLSA and Portal-to-Portal Act.

When applicable, the FLSA prohibits the employment of any person to work beyond a forty-hour workweek, or eight-hour workday, unless that person receives overtime pay of one

and one-half times his or her regular rate of pay for the overtime hours worked.  29 U.S.C. § 207(a)(1); 5 C.F.R. § 551.501(a).  Employers who violate the FLSA are liable to covered employees for their unpaid overtime compensation, and "[a]n action to recover the liability . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).

Although undefined in the statute, the Supreme Court has broadly interpreted "work" under the FLSA to mean "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 31 (2014) (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)).  Exertion is unnecessary for an activity to count as work under the FLSA, because "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen." *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944).  "Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer." *Id.*  And the FLSA's "statutory workweek includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690–691 (1946).

The Supreme Court's broad interpretations of the FLSA "provoked a flood of litigation" and "Congress responded swiftly." *Integrity Staffing*, 574 U.S. at 31-32.  The Portal-to-Portal Act of 1947, 29 U.S.C. § 251 *et seq.*, limits an employer's liability under the FLSA for failing to pay overtime compensation for the following activities:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

After the Portal-to-Portal Act's passage, the Supreme Court interpreted the term "principal activity or activities" to include "all activities which are an 'integral and indispensable part of the principal activities.'" *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29-30 (2005) (quoting *Steiner v. Mitchell*, 350 U.S. 247, 252-53 (1956)).  "An activity is . . . integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing,* 574 U.S. at 33.  Therefore, the question of liability turns on two

questions: 1) what are "principal activities"; and 2) are the claimed activities "integral and indispensable" parts of the principal activities.

The Department of Labor understands that the Portal-to-Portal Act did not alter "the 'continuous workday rule,' under which compensable time comprises 'the period between the commencement and completion on the same workday of an employee's principal activity or activities . . . [,] whether or not the employee engages in work throughout all of that period.'" *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 226 (2014) (quoting 29 C.F.R. § 790.6(b)); *see also IBP*, 546 U.S. at 29 (discussing § 790.6(b)'s adoption of the continuous workday rule).

Even if an activity is otherwise compensable under the FLSA, however, the de minimis doctrine may render it non-compensable. *Anderson*, 328 U.S. at 692. "The de minimis doctrine limits FLSA liability for overtime activities that consume negligible amounts of time." *Bull v. United States*, 68 Fed. Cl. 212, 225, *clarified by* 68 Fed. Cl. 276 (2005), *aff'd*, 479 F.3d 1365 (Fed. Cir. 2007). As the Supreme Court explained:

> When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

*Anderson*, 328 U.S. at 692. To determine whether the work performed is de minimis, a trial court examines: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Bobo v. United States*, 136 F.3d 1465, 1468 (Fed. Cir. 1998) (quoting *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984)). Federal regulations "limit[] the application of the de minimis doctrine to periods of 10 minutes or less per day." *Bull*, 68 Fed. Cl. at 226 (citing 5 C.F.R. § 551.412(a)(1)). Indeed, "[d]ecisions of this court construing the FLSA have developed a rule of thumb that [10] minutes of preliminary or postliminary work that would otherwise be compensable because it is closely related to principal activities will nonetheless be treated as non-compensable if it totals less than [10] minutes per day." *Id.* (alterations in original) (quoting *Riggs v. United States*, 21 Cl. Ct. 664, 682 (1990)).

### 2.     The Complaint Contains Sufficient Facts Plausibly Alleging that the Alleged Work Activities are Compensable Under the FLSA.

The Government argues the Complaint fails to state a claim for relief under the FLSA because it fails to allege any facts that plausibly allege that Plaintiffs' alleged work activities are compensable under the FLSA. ECF No. 12 at 6. To be compensable, the work must be integral to the Plaintiffs' principal activities. *See IBP*, 546 U.S. at 21, 29-30; *Integrity Staffing*, 574 U.S. at 33. Of course, before determining whether a given task is integral to Plaintiffs' principal activities, the Court must first determine what those principal activities are. *Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270, 1276 (10th Cir. 2020) (citation omitted).

> a)      *Plaintiffs' description of their principal activities is not overly broad.*

Plaintiffs allege that their "principal activity is maintaining the safety and security of the Institution, inmates, and staff." ECF No. 11 ¶ 10.  The Government rejects this characterization of the Plaintiffs' principal activity as conclusory because "'safety and security' are not specific activities—much less 'principal activities,' as required." ECF No. 12 at 9-10.  While this broad description of their principal activities may be overbroad, it is not fatal to their claims.  *See Adegbite v. United States*, 156 Fed. Cl. 495, 505 (2021).  Plaintiffs allege that they maintain safety and security by "maintaining constant vigilance to ensure that nothing out of the ordinary is occurring, immediately addressing any issues that they see no matter the location and time of day that it occurs, including before their paid shifts begin and after they end." ECF No. 11. ¶ 10.  Furthermore, Plaintiffs plausibly allege how each of the compensable underlying activities are tied to their principal activity of providing safety and security to the Institution.  *See id.* ¶¶ 19-36.  Providing "security" in this manner is a sufficient description.  *See Aguilar*, 948 F.3d at 1277 ("[T]he officers' principal activities include maintaining 'the custody and discipline of inmates,' 'supervising detainees,' 'searching for contraband[,] and providing security.'") (second alteration in original).

> b)      *The alleged work activities are plausibly "integral and indispensable" to Plaintiffs' principal activities.*

Having determined the Plaintiffs' principal activities, the Court must now turn to the disputed activities to determine whether the Plaintiffs plausibly allege them to be compensable.  The Government challenges each of the specific work activities Plaintiffs allege arguing that they are not integral and indispensable to these principal activities and thus are non-compensable for purposes of the FLSA.  ECF No. 12 at 12.  The Court addresses them in turn.

> (1)      Clearing the staff security screenings.

Plaintiffs first pass through security screenings which includes passing through metal detectors.  ECF No. 11 ¶ 19.  The Government argues that the security screening is integral to the activities of those performing the screening, not the Plaintiffs.  According to the Government, "the activity of preventing contraband from entering the prison is done by those administering the screening – not the plaintiffs who are being screened prior to their shifts." ECF No. 12 at 14 (alterations omitted).  Assuming that the security screening operators' principal activities are as the Government asserts, the Government does not explain why the screenings cannot also be integral to Plaintiffs' principal activities.  Here Plaintiffs do contend that they "perform their principal activity of maintaining safety and security and assist in assuring no contraband enters the Institution." ECF No. 11 ¶ 19.

Other courts have found activities like those alleged by the Plaintiffs to be compensable under the FLSA based on similar descriptions of principal activities.  In *Aguilar*, the Tenth Circuit determined that the officers undergoing a security screening upon arriving at the prison was integral and indispensable to their principal activities of "maintaining the custody and discipline of inmates, supervising detainees, searching for contraband[,] and providing security." 948 F.3d at 1277 (alteration in original) (citation and internal quotation marks omitted).  The

Circuit reasoned that the security screening "prevent[s] weapons and other contraband from entering the prison[, which] . . . is necessarily tied to the officers' work of providing prison security and searching for contraband." *Id.* at 1278 (citation and internal quotation marks omitted); *see also Roberts v. State*, 483 P.3d 212, 220-21 (Ariz. Ct. App. 2021), *review granted* (Sept. 14, 2021) (finding security screening integral and indispensable to correctional officers' principal activity of maintaining prison safety and security); *Alvarez et al. v. United States*, No. 20-1533, 2021 WL 6163405 (Fed. Cl. Dec. 30, 2021) (concluding that Plaintiff correctional officers stated a plausible claim for relief under the FLSA when they alleged security screenings were integral to Plaintiffs' primary duty of maintaining safety and security at a correctional institution); *Adegbite*, 156 Fed. Cl. at 506-07 (same). As explained above, that is what Plaintiffs allege here as well.

The Government relies on several other opinions to argue that the security screenings are not integral and indispensable to Plaintiffs' principal activities. ECF No. 12 at 15-16. In *Henderson v. Cuyahoga County*, the District Court determined that undergoing the security screening is not compensable work under the FLSA because "[w]hile the pre-shift security screening may relate to part of the activity Plaintiff performs during his shifts, *i.e.*, searching for contraband, the Plaintiff could still perform his job effectively if the pre-shift screenings were eliminated." No. 20-1351, 2020 WL 5706415, at *3 (N.D. Ohio Sept. 24, 2020). But it is not clear how the Court in *Henderson* concluded that "Plaintiff could still perform his job effectively if the pre-shift screenings were eliminated" based solely on the pleadings as required under RCFC 12(b)(6). *Id.*; *see also Adegbite*, 156 Fed. Cl. at 507. There is certainly nothing in the pleadings before this Court that would allow any such holding here. Therefore, the Court finds *Henderson* unpersuasive.

In *Hootselle v. Missouri Dep't of Corr.*, the Court determined that, although correctional officers submitting to a security screening is important to ensuring security at a correctional facility, "there are no facts to show what impact, if any, eliminating security screenings would have on the corrections officers' work." 624 S.W.3d 123, 139-40 (Mo. 2021). But, as Plaintiffs assert in their response, the Court in *Hootselle* merely concluded that there were insufficient facts alleged to hold that the security screenings were compensable as a matter of law. ECF No. 13 at 17-18. At this stage, Plaintiffs have alleged sufficient facts that, taken as true, show the security screenings are plausibly integral to their principal activity of maintaining security at the Institution. If discovery shows that Plaintiffs could perform their principal duties effectively without the security screenings, the Government may well prevail on summary judgment or at trial on that basis. But it cannot prevail now.

The Government also relies on *Integrity Staffing* and *Whalen* to support its argument that the security screenings are not compensable as a matter of law. ECF No. 12 at 13-15. But both cases are procedurally and factually distinguishable from this case. In *Integrity Staffing*, Amazon required its warehouse workers to undergo security screenings at the end of their shift to prevent theft, which they alleged was compensable under the FLSA. The Supreme Court held that these screenings were neither a principal activity nor integral and indispensable to the employees' principal activities of fulfilling online shopping orders. *Integrity Staffing*, 574 U.S. at 35-36. That is, the prevention of theft was not integral nor indispensable to the activity of fulfilling shopping orders. But the Plaintiffs' specific duties in this case are much more closely

aligned with the security screenings at issue here and *Integrity Staffing* does not compel dismissal.

*Whalen* is readily distinguishable because it resolved a summary judgment motion based on undisputed facts, while this motion is one to dismiss under RCFC 12(b)(6).  *Whalen v. United States*, 93 Fed. Cl. 579, 582 (2010); ECF No. 12; ECF No. 13 at 19.  In *Whalen*, this Court held that a security inspection was not "integral and indispensable" to the principal activities of air traffic controllers.  93 Fed. Cl. at 600.  But the fact that a security screening is applicable to all persons entering the Institution, does not mean the activity is not "integral and indispensable" to Plaintiff correctional officers.  ECF No. 12 at 14-15.  It is plausible that undergoing a security screening is integral or indispensable to preventing contraband from entering the Institution, and an activity without which Plaintiffs plausibly could not perform the job they were hired to do.  Taking this allegation as true, Plaintiffs have stated a claim for relief under the FLSA.

(2)     Donning and doffing of equipment.

The Government argues that Plaintiffs' "duty belt and protective vest would only set off the metal detector if worn in conjunction with 'metal chains.'"  ECF No. 12 at 18.  According to the Government, because Plaintiffs fail to allege that they are required to wear *metal* duty belts and *metal* protective vests, the duty belts and protective vests must be something other than metal.  And if these items are not metal, then Plaintiffs can wear them through the metal detector.  *Id*.  But the Government necessarily assumes that the equipment may not be metal, which is not supported by the Complaint, which reads: "Retrieving and donning the duty belt and metal chains and chits must be performed on defendant's premises after clearing the screening site because the plaintiffs cannot wear their duty belts, protective vests, and metal chains as they walk through the upright metal detector without sounding the alarm."  ECF No. 11 ¶ 19.  The Court reads this to allege that the correctional officers cannot wear their equipment—*i.e.*, duty belts, protective vests, and metal chains—while passing through the metal detector.  And if Plaintiffs remove this equipment before passing through the metal detector, they must put it back on after passing through.  Even if the equipment is kept on the other side of the metal detector, Plaintiffs already alleged that this equipment is necessary for the officers to perform their principal activities. This means Plaintiffs must don the equipment after they clear the security screening whether they were wearing the equipment prior to the screening or not.  In any case, Plaintiffs have sufficiently alleged that donning belts, vests, and metal chains on the other side of the metal detector is integral and indispensable for them to perform their principal activities.  This states a plausible claim for relief under the FLSA.

As the Tenth Circuit found in *Aguilar*, returning equipment, is "integral and indispensable to the officers' principal activities of maintaining custody and discipline of the inmates and providing security."  948 F.3d at 1283.  As *Aguilar* found, "the officers use keys to guard the inmates and to lock and unlock doors to ensure security; use radios to communicate with officers at their posts and to give them directions and instructions throughout the day; and use [h]and restraints and pepper spray . . . as both a deterrent and if necessary, to control unruly inmates."  *Id.* at 1280 (alteration in original) (citation and internal quotation marks omitted); *see also Hootselle*, 624 S.W.3d at 141 (holding that picking up and returning equipment such as keys and radios is integral and indispensable to corrections officers' principal activities of supervising, guarding, escorting, and disciplining offenders).  Here, Plaintiffs allege their duty belts hold

9

essential equipment including radios, pepper spray, and keys.  ECF No. 11 ¶¶ 19, 25.  Whether correctional officers can perform their work without their duty belts and equipment is a question for another day.

(3)     Clearing the sally port and slider gate.

The Government contends that Plaintiffs failed to sufficiently allege that flipping the accountability chit and clearing the sally port are "'integral and indispensable' to plaintiffs' principal activity of guarding the Institution."  ECF No. 12 at 19.  The Government made a similar argument in *Alexander v. United States*, 156 Fed. Cl. 512, 528 (2021).  There, the Court found Plaintiff correctional officers sufficiently alleged that once they entered the correctional facility's sally port and flipped the accountability chit, they were "on duty and responsible for the 'safety and security'" of the inmates and staff.  *Id.*  The *Alexander* Court determined that clearing the sally port and flipping the chit were activities "plausibly integral and indispensable and, therefore, tied to the prison guards' principal activities for which they are hired."  *Id.*

Like in *Alexander*, all the Court needs to decide at this juncture is whether Plaintiffs have plausibly stated a claim for relief under the FLSA.  Plaintiffs have done so.  Plaintiffs allege they are performing their principal activities of maintaining safety and security when they clear the sally port and flip the accountability chit.  ECF No. 11 ¶¶ 21-24.  During this time Plaintiffs allege they are in uniform and identifiable to inmates and staff as correctional officers.  *Id.* ¶ 20.  Plaintiffs allege that clearing the sally port and slider gate, and flipping their accountability chit are, in and of themselves, integral and indispensable to their principal activity of maintaining the safety and security of the Institution.  At FCI Elkton, Plaintiffs claim they flip their accountability chit after they enter the Control Center sally port.  *Id.* ¶ 21.  After clearing the sally port, Plaintiffs at FCI Elkton then clear a slider gate and are locked inside the Institution with the inmates.  *Id.*  At FSL Elkton, after Plaintiffs don their duty belts they clear a locked, glass door leading onto the FSL Compound and proceed to the Compound Office or post.  *Id.* ¶ 23.  At both FCI and FSL Elkton, once Plaintiffs pass through the screening site and collect their equipment, they "continue to perform pre-shift work activities as part of the continuous workday . . . ." *Id.* ¶ 20.  Also, during this time Plaintiffs "perform their principal activity of maintaining safety and security . . . inside the secure confines of the Institution because, among other things, they, at all times, are in uniform, identifiable to the inmates and staff as correctional officers . . . ." ECF No. 11 ¶ 24.  Plaintiffs also allege that these activities, independently, are integral and indispensable to the performance of their principal activities of maintaining the safety and security of the Institution.  *Id.* ¶ 20.  In the alternative, Plaintiffs allege that the activities they perform after the security screening, *i.e.*, clearing the sally port and slider gate and flipping the accountability chit, are part of the continuous workday.  *Id.*  These allegations plausibly state a claim for relief under the FLSA and are therefore sufficient to survive the Government's Motion to Dismiss.

(4)     Walking to and from assigned posts.

The Government challenges Plaintiffs' allegation that the time spent walking to and from duty posts before and after shifts is compensable.  ECF No. 12 at 20 (citing ECF No. 11 ¶¶ 21-24).  But the Government's challenge fails for the same reasons it failed in *Adegbite*—the Plaintiffs are performing their job duties while walking to and from their posts.  Adegbite, 156

10

Fed. Cl. at 508; *see also Alvarez*, 2021 WL 6163405 (denying the Government's motion to dismiss because Plaintiffs plausibly alleged that walking to and from their duty posts were integral and indispensable components of their principal activity of maintaining safety and security at FCI Mendota).

The Government first argues that this time is non-compensable under *Whalen*. *See* ECF No. 12 at 21. In *Whalen*, a group of air traffic controllers argued that they should have been paid for passing through security screenings and travelling from the security screening at the entrance to Edwards Air Force Base to their duty stations. 93 Fed. Cl. at 597. Judge Lettow rejected this argument with a compelling analysis that found these activities were not integral to the air traffic controllers' principal activities. But according to the Complaint, Plaintiffs "perform their principal activities of supervising and monitoring inmates, and maintaining safety and security while walking to their assigned posts" because they must "remain vigilant, alert, and ready to (and do) respond to emergencies." *Id.* ¶ 24. Whether air traffic controllers perform their principal activities while travelling from a security checkpoint to the control tower (clearly, they do not) sheds no light on whether Plaintiffs' can prevail here. According to the Government, the authorities that support its argument that walking to assigned posts is non-compensable is "legion."[3] ECF No. 12 at 22; *but see Alvarez*, 2021 WL 6163405 (rejecting cases cited by the Government that purportedly supported its argument that walking to an assigned post is non-compensable). But as Judge Davis recognized in *Alvarez*, each of the Government's cases was a decision on the merits. This procedural distinction is sufficient to militate against dismissing Plaintiff's action at this stage.

The Government next argues that an employer may require its employees to complete certain de minimis tasks during a commute that is non-compensable. ECF No. 12 at 23 (citing *Bobo*, 136 F.3d at 1465, 1468). While this is true, the Court analyzes whether time is de minimis using the factors stated in *Lindow*. *See* 738 F.2d at 1062-63 (listing factors to consider when determining whether otherwise compensable time is de minimis). Here, Plaintiffs have alleged sufficient facts to satisfy each factor. Plaintiffs start and end at a fixed point in the Institution, making the administrative task of accounting for the additional time relatively simple. Plaintiffs also adequately allege that this occurs for "each shift" at each facility, and that the aggregate amount of time spent for each activity is compensable. *See* ECF No. 11 ¶¶ 14, 34. And finally, *Bobo* is distinguishable because the Court was ruling on cross-motions for summary judgment, rather than a motion to dismiss. 136 F.3d at 1466.

The Government also challenges the notion that simply remaining vigilant is sufficient to make Plaintiffs' walking through the Institution compensable. ECF No. 12 at 24. Here, the Government compares this time to time the Court found non-compensable in *Akpeneye v. United*

---

[3] *See* ECF No. 12 at 22 (citing *Bishop v. United States*, 72 Fed. Cl. 766 (2006) (withholding summary judgment for Plaintiffs because there was a factual dispute as to whether the time spent walking to the post was de minimis), *aff'd sum nom. Carlsen v. United States*, 521 F.3d 1371 (Fed. Cir. 2008), *as corrected on reh'g* (Apr. 29, 2008)); *Mertz v. Wisc. Dep't of Workforce Dev.*, 2015 WI App 90, 365 Wis. 2d 607, 871 N.W.2d 866 (Wis. Ct. App. 2015) (holding that a correctional officer's time spent walking to his post was not compensable in part because the correctional officer was not required to respond to emergencies while walking to his post).

*States*, 138 Fed. Cl. 512 (2018).  In *Akpeneye*, the Court found that although Pentagon security officers had to remain vigilant, ready to respond to emergencies, and check their radios during their mid-day breaks, that time was not compensable.  *Id.* at 532-33.  But *Akpeneye* does not compel dismissal here.  Although remaining vigilant while guarding the Pentagon is clearly of vital importance, it is not the same thing as remaining vigilant while walking through a prison where the people Plaintiffs are guarding may attack them.  More importantly, *Akpeneye* granted summary judgment on this point based on facts developed in discovery.  *Id*. at 543.[4]

Similarly, the Government challenges the Plaintiffs' claims under *Babcock v. Butler County*, 806 F.3d 153 (3d Cir. 2015), which affirmed the dismissal of an FLSA complaint seeking compensation for a 15-minute unpaid portion of a one-hour lunch break.  ECF No. 12 at 24.  In *Babcock*, the Circuit affirmed under the "predominant benefit test," which determines "whether the officer is primarily engaged in work-related duties during" uncompensated periods.  806 F.3d at 156 (citation omitted).  But this test requires the Court to evaluate "the totality of the circumstances to determine, *on a case-by-case basis*, to whom the benefit . . . inures."  *Id*. at 157 (emphasis added).  And in *Babcock*, the Circuit explicitly recognized that even though the District Court dismissed the complaint under Rule 12(b)(6), "there has been . . . 'sufficient development of the facts to enable a capable application of the appropriate predominant benefit standard . . . .'"  *Id*. at 158.  That is not the case here.

The Government cites numerous cases in a final effort to show that "requiring an employee in a security related position to be alert and on call to respond to emergencies does not transform non-compensable time into compensable time."  ECF No. 12 at 25 n.6.  But as Plaintiffs counter, all of these cases are factually or procedurally distinct from the instant case in that those cases were concerning mid-shift breaks and mealtimes, or were summary judgment decisions.  ECF No. 13 at 30 n.7.

And other courts have found the time prison guards spend walking through a prison to be compensable.  The Missouri Supreme Court in *Hootselle* found officers' walking to and from their posts compensable because the officers were "on duty and expected to respond to incidents involving offenders; required to act as prison guards whenever they are inside the prisons; and required to remain vigilant and respond to incidents as they arise."  624 S.W.3d at 141 (citation and internal quotation marks omitted).  In other words, these activities are what the officers are employed to do—supervising, guarding, escorting, and disciplining offenders—regardless of whether they perform these activities at their posts or away from them.  *Id.* at 142.

Finally, the Government argues that Plaintiffs' failure to specifically allege the times and distances it takes for plaintiffs to complete the walk from the security screening to their post warrants dismissal.  ECF No. 12 at 26 n.7.  But, once again, the Government seeks to impose a greater burden on Plaintiffs than necessary to survive a motion to dismiss.  All that is required in a complaint is to plausibly allege entitlement to relief above the speculative level.  Whether these

---

[4] *Akpeneye* also denied summary judgment on the remaining claims, including donning and doffing, because of disputed material facts.  138 Fed. Cl. at 542-43.  This further supports denial of the Government's motion here.

activities actually take more than a de minimis amount of time is a matter appropriately resolved after discovery.

(5)    Exchange of information and equipment at shift change.

The Government asserts that it is "not clear" that the exchange of equipment and information that occurs after Plaintiffs arrive at their posts is "'integral' or intrinsic to the correctional officers' principal activities." *Id.* at 27.  Plaintiffs' Complaint reads:

> As they exchange equipment and vital, potentially, life-saving information, Plaintiffs are performing their principal activities of supervising and monitoring inmates *on post*.  While doing so, they also continue to perform their principal activity of maintaining safety and security of the Institution by ensuring accountability for keys and correctional equipment so that such items do not fall into the hands of inmates, as well as by ensuring that oncoming officers have all information necessary to maintain the safety and security of the inmates, staff and post during their shift.

ECF No. 11 ¶ 26 (emphasis in original).  Correctional officers exchanging information about the very job they are performing, and exchanging equipment necessary to perform that job, plausibly appear to be integral and intrinsic to performing that job.  Further, Plaintiffs allege that there is a *de facto* overlap in the shift of the incoming and outgoing officers.  That is, although two officers engage in the equipment and information exchange, only one of the officers is being compensated for this activity.  *Id.* ¶¶ 27, 29-30.  The facts as alleged sufficiently state a claim for relief under the FLSA.  *See Alexander*, 156 Fed. Cl. at 530 (finding that the time spent by plaintiff correctional officers exchanging equipment and information at the guard post was "plausible as 'integral and indispensable' to plaintiffs' principal activities."); *Alvarez*, 2021 WL 6163405 at, *2, *7 (finding plaintiff correctional officers stated a plausible claim for relief regarding the time spent exchanging information and equipment at their guard post).

(6)    Exiting the Institution.

The final activity Plaintiffs allege they should be compensated for is "walking from their posts to the secured perimeter after their paid shifts while performing" a multitude of duties. ECF No. 11 ¶¶ 31, 34.  These duties include "remaining vigilant, alert, and ready to respond to emergencies while within the secured confines of the Institution, supervising and monitoring inmates, observing and correcting inmate behavior, looking for contraband, responding to body alarms and other emergencies, and returning equipment to the FCI Control Center."  *Id.* ¶ 31. Since March 2020, when Plaintiffs return equipment, they are "required to wipe down and sanitize all equipment in the front lobby before returning it to the Control Center."  *Id.*  Also while walking from their posts to the Control Center, "Plaintiffs are required, and do, respond to emergencies, including violent fights between inmates within the Institution."  *Id.* ¶ 32. Plaintiffs allege that failure to respond to an emergency while walking from their assigned duty posts can result in discipline "up to and including termination."  *Id.*  And Plaintiffs claim that these activities are "part of the continuous workday" and that these activities are "integral and

13

dispensable to the Plaintiff's principal activity of maintaining safety and security of staff, inmates, and the Institution." *Id.* ¶¶ 31, 33.

According to Plaintiffs, when they leave their assigned duty posts they "engage in these same work activities in reverse (with the exception of clearing the screening site)." ECF No. 13 at 8. Thus, if Plaintiffs adequately alleged that the activities they perform while walking to their duty posts are compensable under FLSA, then the activities they perform while walking from their duty posts are also compensable. "Like when plaintiffs walk to their post, these activities are plausible, compensable activities under the FLSA and sufficiently tied to plaintiffs' principal activity for which they are hired." *Alexander*, 156 Fed. Cl. at 530.

### 3.   The Continuous Workday Rule.

The Government may be vindicated through discovery and be able to show that some, if not all, of the alleged work activities are non-compensable under the FLSA. But those issues are not for the Court to determine at this stage. This is particularly true here because the continuous workday rule supports that the Complaint sufficiently states that Plaintiffs' alleged work activities are compensable under the FLSA. Specifically, because the Complaint states a claim for relief regarding Plaintiffs' first and last alleged work activities of the day, undergoing the security screening and exiting the Institution, all the intermediary activities would likely be compensable under the continuous workday rule. Indeed, the court in *Aguilar* found that all the officers' alleged work activities were compensable under the FLSA pursuant to the continuous workday rule after finding that their first alleged activity, undergoing the security screening, and the last alleged activity, returning keys and equipment, were integral and indispensable to their principal activity. 948 F.3d at 1279-80, 1283, 1289.

The Government argues that the continuous workday rule does not apply to Plaintiffs' alleged work activities, asserting that the Plaintiffs' activities are each de minimis. ECF No. 12 *passim*. The Government relies on *Singh v. City of New York*, 524 F.3d 361, 371 n.8 (2d Cir. 2008), to argue that "a de minimis principal activity does not trigger the continuous workday rule." ECF No. 12 at 19, 28, 31. The Court does not agree. As an initial observation, other courts disagree with *Singh* and hold that a de minimis principal activity can trigger the continuous workday rule. *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 377-78 (4th Cir. 2011); *Butler v. DirectSat USA*, 55 F. Supp. 3d 793, 816-17 (D. Md. 2014) (holding that a de minimis principal activity can trigger the continuous workday rule). More importantly, as the Fourth Circuit explained:

> In applying the de minimis rule, we consider the aggregate amount of time for which the employees are otherwise legally entitled to compensation. *See* DOL Wage & Adv. Mem. No.2006–2 n.1 (May 31, 2006). We do not, as [defendant] suggests, evaluate each task or group of tasks separately to determine if the time period is de minimis. Adopting [defendant's] approach would undermine the purpose of the FLSA . . . .

*Perez*, 650 F.3d at 373. Whether Plaintiffs can prevail and show that any of the work is compensable is not the question for today. The issue before the Court is whether the Plaintiffs

have adequately pleaded that they are required to work at least ten minutes of compensable work beyond their eight-hour shifts without pay.  They have done so.

      4.    <u>The Complaint Contains Sufficient Factual Details Regarding the Timing and Duration of the Alleged Work Activities.</u>

The Government repeatedly argues that Plaintiffs fail to state a claim because they do not allege how much time each pre- and post-shift activity takes.  ECF No. 12 at 12 n.2, 16 n.3, 19, 20 n.4.  If this Court were to find that some of the alleged activities are not compensable, the Government believes this Court would have to speculate as to whether the de minimis doctrine is satisfied.  ECF No. 12 at 12 n.2.  But whether the de minimis doctrine is satisfied is determined by looking at the aggregate of the alleged compensable activities, not by scrutinizing each discrete individual activity alleged to be compensable.  *Alvarez*, 2021 WL 6163405, at *8 (citing *Abbey v. United States*, 99 Fed. Cl. 430, 437 (2011)).  Moreover, after work has begun, the continuous workday rule holds that all work performed after that point is compensable.  29 C.F.R. § 790.6(a); *Aguilar*, 948 F.3d at 1277-81; *see also Adegbite*, 156 Fed. Cl. at 510.

Plaintiffs' alleging that they spent between fifteen-to-thirty minutes per day in total before and after their scheduled shifts performing required, uncompensated work is not implausible.  There is nothing implausible about the allegation that the activities addressed above that are potentially compensable took between 15-30 minutes to complete.  While it is true that Plaintiffs do not specify how much time each activity takes, it remains plausible that the activities take between 15-30 minutes per day.  In fact, the Complaint alleges that "[a]t all times material herein, defendant has suffered or permitted plaintiffs to work at least 15-30 minutes each shift, and sometimes more, before and after their scheduled shift times without compensating plaintiffs for this work time."  ECF No. 11 ¶ 14.  Finally, the duration of each activity is appropriately determined during discovery, not on a motion to dismiss.  At this stage, Plaintiffs have plausibly alleged that the work activities in the aggregate are compensable.  That is all the Court requires.

**B.    Plaintiffs' Complaint States a Claim for Relief Under the BPA.**

The Government also argues that the Complaint fails to state a claim for relief under the BPA.  ECF No. 12 at 32 (citing ECF No. 11 ¶ 47).  The BPA, in pertinent part, provides:

> An employee of an agency who . . . is found . . . to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—
>
> (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—
>
> (i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred . . . .

5 U.S.C. § 5596(b).  In arguing that the Complaint fails to state a claim for relief under the BPA, the Government relies solely on its contention that Plaintiffs' claims for relief under the FLSA fail.  ECF No. 12 at 32-33.  This is because the BPA "is not itself a jurisdictional statute.  It is merely derivative in application, depending on a prior finding of appropriate jurisdiction in the Claims Court."  *Refaei v. United States*, 129 Fed. Cl. 1, 23 (2016), *aff'd*, 725 F. App'x 945 (Fed. Cir. 2018) (quoting *Mitchell v. United States*, 930 F.2d 893, 897 n.3 (Fed. Cir. 1991)) (additional citations omitted).  Therefore, "'[u]nless some other provision of law commands payment of money to the employee for the 'unjustified or unwarranted personnel action,' the Back Pay Act is inapplicable.'"  *Id*. (quoting *Spagnola v. Stockman*, 732 F.2d 908, 912 (Fed. Cir. 1984)) (additional citations omitted).

The Government's argument here is that because the FLSA purportedly is inapplicable to this case, the Plaintiffs' BPA claims must fail as well.  ECF No. 12 at 32-33.  But as explained above, the Plaintiffs adequately pleaded their FLSA claims, which survive the Government's motion.  With the FLSA providing jurisdiction, there is no basis to dismiss Plaintiffs' BPA claims.

## IV.    Conclusion

The Government's motion may succeed at summary judgment when facts are established through discovery.  But that does not mean it can prevail now as a Motion to Dismiss for failure to state a claim.  Because the Court holds that the Plaintiffs have adequately pleaded their claims:

1.  The Government's Motion to Dismiss, ECF No. 12, is hereby **DENIED** in its entirety; and

2.  Plaintiffs' Motions for Leave to File Notice of Supplemental Authority, ECF Nos. 17 and 19, are **GRANTED.**

**IT IS SO ORDERED.**

s/ Edward H. Meyers
Edward H. Meyers
Judge